**E.D. MITCHELL LIVING TRUST, Esty Decatur Mitchell, Trustee, Decatur Walter Mitchell, Travis Burke Mitchell, and Michele Verilla Mitchell, Plaintiffs–Respondents,**

v.

**Maurice E. MURRAY and Bertha W. Murray, his wife, and John Vandiver, Successor–Trustee Under Deed of Trust, Defendants–Appellants.**

No. 17216.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 7, 1991.

Steven Privette, Willow Springs, for defendants-appellants.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for plaintiffs-respondents.

PARRISH, Judge.

This is an appeal from a judgment of the Circuit Court of Texas County that reformed a purchase money promissory note executed by respondents Decatur Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell. The promissory note was payable to the order of appellants Maurice E. Murray and Bertha W. Murray. It was secured by a deed of trust to certain real estate in Texas County, Missouri, that the makers of the promissory note had purchased from appellants. This court affirms in part; reverses in part; and remands with instructions.

The real estate in question was purchased by Decatur Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell from appellants July 1, 1981. The purchase price for the real estate was $1,050 per acre. The amount of acreage in the tract was calculated by Mike Manier, a registered land surveyor, to be 90.9 acres, resulting in a total purchase price of $95,445. The promissory note represented part of the purchase price and was in the face amount of $60,000. The balance of the purchase price was paid to appellants at the time the real estate sale was closed. The promissory note bore interest at the rate of ten percent (10%) per annum. It was dated July 13, 1981, and was payable in semi-annual payments of $3,000 each, plus interest. Its payments were due "on the 15th day of January and July of each year, beginning on the 15th day of January, 1982, until fully paid."

The original purchasers conveyed the real estate to the E.D. Mitchell Living Trust, Esty Decatur Mitchell, Trustee, by deed dated February 25, 1986. The deed was recorded in the deed records of Texas County, Missouri, on May 3, 1986. Payments were made as required by the terms of the promissory note to and through January 15, 1987.

In September 1986, respondents caused the property to be surveyed. The survey was performed by Mike Manier, the same surveyor who had calculated the amount of acreage in the tract when the Mitchells acquired it. According to Mr. Manier's 1986 survey, the number of acres that had been conveyed by appellants was 82.98 acres, 7.92 acres less than the number of acres upon which the purchase price was calculated. The 1986 survey measured only to the low-water mark on the east bank of the Piney River, whereas the original calculation included the land in the river bed. The 1986 survey also used, as one of its corners, a point that the surveyor determined to be "[t]he northwest corner of the southeast quarter of the southeast quarter of section 24, 32 north, range 10 west," rather than a "heap of stones" that appellant Maurice Murray pointed out as the location for that corner when the amount of acreage was calculated to determine the sales price. The difference between the 1981 calculation and the determination that was based upon the 1986 survey was "[a]bout 7.9 acres, slightly less than eight acres." The difference that the surveyor attributed to the use of different locations for the questionable corner was .93 acre. "The other seven acres would be in the stream bed."

Respondents filed this action in the trial court on December 28, 1988. Respondents requested, in Count I, that the trial court determine the amount of acreage that had been conveyed by appellants; that the trial court "conduct an accounting of the proceeds paid" on the promissory note; and that it "thereafter reform the Promissory Note by reducing the principal amount and accrued interest in order to properly reflect the originally agreed price on the basis of mutual mistake of the parties." In Count II, respondents sought to enjoin appellants from proceeding to foreclose on the real estate pursuant to the power of sale contained in the deed of trust that secured payment of the promissory note. Respondents later, by Count III in a second amended petition, interpleaded the sum of $32,400 into the court, representing the balance due by the terms of the promissory note that respondents sought to reform. Respondents alleged in Count III that a

substantial portion of the funds interpleaded "represent[ed] an overpayment of principal and interest of the purchase price which is the subject of this cause of action, and that the amount of such overpayment ... together with interest accruing thereon should be distributed by the Texas County Circuit Clerk and returned to [respondents]."

The trial court found the issues in favor of respondents on all counts. It ordered reformation of the promissory note by changing its face amount from $60,000 to $51,684. The trial court found that respondents had deposited the sum of $32,400 in the registry of the court and, in addition, had deposited $5,000 to secure an injunction bond they had given. The judgment ordered the clerk "to pay to [respondents] from the principal funds in trust the sum of Seventeen Thousand Seventy–Eight Dollars and Thirty–Eight Cents ($17,078.38) (i.e. 52.7% of the initial deposit) plus pro rata interest accrued thereon to date." The judgment further ordered "that the Texas County Circuit Clerk shall pay to [appellants] Maurice E. Murray and Bertha W. Murray, his wife, the sum of Fifteen Thousand Three Hundred Twenty–One Dollars and Sixty–Two Cents ($15,321.62) (i.e. 47.3% of the initial deposit) plus pro rata interest thereon accrued to date." The injunction bond was released and the amount securing that bond was ordered paid to Esty Decatur Mitchell "plus any accrued interest." The judgment ordered, upon payment of the funds to the parties in the manner prescribed, that "the promissory note ... is hereby declared satisfied and paid in full and the Deed of Trust securing the same ... is hereby ORDERED to be released and the same shall have no further effect as a lien against the real estate." Appellants were ordered "to take the necessary action including but not limited to the execution of an appropriate Deed of Release in order to release the aforementioned Deed of Trust." The trustee on the deed of trust was permanently enjoined "from instituting foreclosure proceedings."

Appellants present two points on appeal. By their first point, appellants contend that the trial court erred in reforming the promissory note because appellants owned, prior to their sale to Decatur Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell, the land to the center of the Piney River and that land was included in the parcel that was conveyed to the Mitchells. By their second point on appeal, appellants contend that the trial court erred in reforming the promissory note because appellants owned the .93 acre in the area where the "heap of stones" was located and that land was included in the parcel that was conveyed to Decatur Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell.

The land that was conveyed to Mitchells was described by metes and bounds. The course in the description that bordered the Piney River began where the east line of the northeast quarter of the northeast quarter of Section 25, Township 32 North, Range 10 West intersected the river. It ran "thence in a Northwesterly course following Piney River to the true place of beginning" of the tract of land conveyed. The reference to the river as boundary was consistent with the manner in which the tract of land was described when it was acquired by appellant Maurice E. Murray. The Piney River was a boundary along a side of the tract that was conveyed to him. The warranty deed to Murray described the land conveyed in the following manner:

All that part of the North East Quarter of the North East Quarter of Section Twenty five (25) lying East of Piney River;

Also, all that part of the South Half of the South East Quarter lying East and North of Piney River; all of the North West Quarter of the South East Quarter; and all that part of the East Half of the South West Quarter lying East and North of Piney River in Section Twenty four (24); all of above land in Township Thirty two (32) North; Range Ten (10) West;

except for two parcels excepted from that description on the warranty deed.

■ In construing a deed that calls for a boundary to be along the bank of a stream

and describes the parcel of land conveyed as running along the course of the stream, the stream rather than the bank is the boundary. See *Bratschi v. Loesch*, 330 Mo. 697, 51 S.W.2d 69, 70 (1932). *See also Westmoreland, et al. v. Beutell, et al.*, 153 Ga.App. 558, 266 S.E.2d 260, 261 (1980). Whether the boundary of land that borders a stream is the low-water mark along the edge of the stream or is the middle of the stream, absent contrary restriction or reservations in the instrument that conveyed title, depends on the navigable status of the stream.

If a stream forms the boundary of a tract of land and is navigable, the owner of the land owns to the water's edge at its low-water mark. *Sibley v. Eagle Marine Ind., Inc.*, 607 S.W.2d 431, 435 (Mo. banc 1980). If "a nonnavigable stream of water constitutes the dividing line between two tracts of land, the possessor on either side, absent contrary restrictions or reservations in his deed, holds to the center or thread of the stream." *Weber v. Johannes*, 673 S.W.2d 454, 459–60 (Mo.App.1984).

■ Although judicial notice may be taken of the navigability of more important rivers and streams, "less significant waterways must be established in the same manner as any other question of fact." Annotation, *Deeds: Description of Land Conveyed by Reference to River or Stream as Carrying to Thread or Center or Only to Bank Thereof–Modern Status*, 78 A.L.R.3d 604, 611 (1977). Here, the record is silent as to any proof of the navigability of the Piney River at the location in question. The burden of proving "navigability" is that of the party who relies on that proposition—in this case respondents. See *Tonkins v. Monarch Bldg. Materials Corp.*, 347 S.W.2d 152, 157 (Mo.1961), *citing Sneed v. Weber*, 307 S.W.2d 681, 689 (Mo. App.1957). Having not proven the Piney River to be navigable, it is considered non-navigable. The description in the deed by which appellants conveyed the land to

Mitchells evidenced no intention to not convey the land to the thread of the Piney River. The land conveyed therefore extends to the middle of that stream. *See Wallis v. County of St. Louis*, 621 S.W.2d 720, 723 (Mo.App.1981). *See also Cochran v. Missouri, K. & T. Ry. Co.*, 94 Mo.App. 469, 68 S.W. 367, 368 (1902).

Appellants first point on appeal is well-founded. The acreage from the low-water mark on the east side of the stream to the middle of the stream was part of the land conveyed to Mitchells. The trial court erred in reforming the note by reducing its face amount by an amount equal to the purchase price of $1,050 per acre multiplied by the acreage between the low-water mark on the east side of the stream to middle of the stream.

■ In arguing their second point on appeal, appellants assert, as they did with respect to the land that was the basis of their first point on appeal, that they owned the .93 acre near the "heap of stones" that the surveyor, Mike Manier, determined was outside the boundaries of the tract described in appellants' deed to Mitchells. Appellants argue that even if the survey is correct, because of their "occupation of the property for thirty years at the time of sale in 1981, they would clearly have established title by adverse possession." They argue, that being the case, "Appellants had the right to convey title all the way to the heap of rocks." This position fails for two reasons. First, the claim of adverse possession was not presented to the trial court. It was raised for the first time in the course of the appeal before this court.[1] An issue not presented before the trial court is barred from being raised as a defense for the first time on appeal. *Fesperman v. Silver Dollar City, Inc.*, 796 S.W.2d 384, 387 (Mo.App.1990); *Centerre Bank of Branson v. Campbell*, 744 S.W.2d 490, 494 (Mo.App.1988). Secondly, the .93 acre is not included in the description of the land conveyed by appellants to Decatur

---

1. In order to establish title to real estate by adverse possession, the party making the claim must specially plead adverse possession and must prove each of the essential elements necessary to establish title by that means. *Wilton Boat Club v. Hazell*, 502 S.W.2d 273 (Mo.1973); *Hauber v. Gentry*, 215 S.W.2d 754 (Mo.1948).

Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell.

The evidence presented was that the "heap of stones" was used as a corner for purposes of calculating the acreage in the tract of real estate that Mitchells bought from appellants. Appellants believed that the "heap of stones" was the northwest corner of the southeast quarter of the southeast quarter of Section 24, Township 32 North, Range 10 West. However, when the 1986 survey was performed, the "heap of stones" was 61.49 feet beyond the actual corner that was used in the description on the warranty deed that conveyed the land to Mitchells. As a result, the tract that was conveyed was .93 acre less than what was calculated at the time of the sale.

The sales price was $1,050 per acre. The trial court correctly determined that the face amount of the promissory note was overstated by $976.50 [2] by reason of the mutual mistake of appellants and Mitchells at the time the real estate sale was closed. The reduction of the face amount of the promissory note by $976.50 is supported by substantial evidence and is consistent with the weight of the evidence. The trial court committed no error in reforming the promissory note accordingly. Appellants' second point is denied.

The judgment in favor of respondents on Count I reforms the face amount of the promissory note by reducing it by the amount of $7,339.50 which represents the sales price of the land that lies between the low-water mark on the east side of the Piney River and the middle of the stream. That part of the judgment on Count I is reversed. The judgment on Count I also reforms the face amount of the promissory note by reducing it by the amount of $976.50 which represents the sales price of the .93 acre of land that was outside the boundaries of the tract conveyed by appellants to Mitchells. That part of the judgment on Count I is affirmed. The judgment on Count I also declared the amount of the promissory note that remained due and payable on January 15, 1990. The amount so declared was based upon calcu-lations made in accordance with the reformation of the promissory note as ordered by the trial court. That part of the judgment on Count I is reversed. The judgment on Count II enjoined appellants and the trustee on the deed of trust that secured payment of the promissory note "from instituting foreclosure proceedings under said Deed of Trust or taking any further action to enforce the same." The judgment on Count II is reversed. The judgment on Count III directed the Circuit Clerk to distribute the funds that were interpleaded and paid into the registry of the court by respondents. The amounts that were ordered distributed were determined based upon the trial court's erroneous findings in Count I regarding reformation of the promissory note. The judgment on Count III is reversed. The case is remanded for further action by the trial court as to Counts I and III. The Circuit Court of Texas County is directed to enter judgment on Count I reforming the promissory note dated July 13, 1981, executed by respondents Decatur Walter Mitchell, Travis Burke Mitchell and Michele Verilla Mitchell, as makers, and payable to the order of appellants Maurice E. Murray and Bertha W. Murray in accordance with the holding of this opinion. The Circuit Court of Texas County shall further determine and declare in the judgment on Count I the amount that remains due and payable on the aforesaid promissory note, that determination to be made in accordance with the holding of this opinion. The Circuit Court of Texas County is further directed to determine, in accordance with the holding of this opinion, those persons who are entitled to receive any and all of the funds heretofore interpleaded and paid into the registry of that court by reason of Count III of respondents' Second Amended Petition and to order, by the entry of judgment on Count III, that those funds be distributed to the persons entitled thereto.

PREWITT, P.J., and CROW, J., concur.

---

2. The sales price per acre, $1,050, multiplied by .93 acre equals $976.50.