Jack J. SCHWARTZ, Appellant,

v.

CUSTOM PRINTING COMPANY,
et al., Respondents.

No. 69430.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1996.

491

Edward James Hanlon, Borgman, Hanlon, Schwartz & Wilson, Clayton, for appellant.

Stephen L. Beimdiek, Lashly & Baer, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Jack Schwartz, appeals the judgment of the Circuit Court of the County of St. Louis granting respondents', Custom Printing Company, Donald Lenauer, and Elbert Clark, motions for summary judgment. We affirm.

Schwartz, an attorney and certified public accountant, served as outside legal counsel to Custom Printing Co. ("Custom") for approximately twenty years, from 1969 to 1989. Lenauer and Clark were two principal owners of Custom, a closely held commercial printing business. In 1989, Schwartz left private practice to become Custom's new President and CEO upon Clark's, Custom's then President and CEO, retirement. On May 30, 1989, Schwartz entered into an employment contract with Custom for a five-year term. As part of that contract, the parties were to enter into a stock agreement whereby Schwartz was to receive a yearly stock bonus.[1] A document titled "Common Stock Agreement" was drafted and signed by the parties on July 10, 1990. The agreement stated the stock award was to be "a bonus for services rendered by Schwartz...." For each award, Schwartz was to receive a number of shares amounting to $300,000 per year, all five awards to be made "on or before August 1, 1994." The agreement further provided

6. Cessation of employment No Awards shall occur subsequent to Schwartz's cessation of employment by Custom, regardless of the reason for cessation.

1. This bonus was in addition to his yearly salary as set out in the employment contract: $250,000 during year one, $275,000 during year two, $300,000 during year three, $350,000 during year four, and $375,000 during year five and every year thereafter.

7. Irrevocable proxy Schwartz agrees to grant an irrevocable proxy, on behalf of himself and his heirs or assigns, in favor of Elbert E. Clark and Donald H. Lenauer ... with respect to all voting rights of all Shares awarded under this Agreement.

\* \* \* \* \* \*

10. Buy-sell agreement Whenever Schwartz's employment by Custom ceases, for any reason, the parties agree all Shares shall be sold back to Custom by Schwartz

. . . .

(c) At the sole option of Custom, it may make payment for such Shares in the form of five equal payments beginning one year after Schwartz ceases employment.

On August 1, 1990, Custom awarded Schwartz 12,000 shares of Custom stock pursuant to the stock agreement. Schwartz continued to serve as President and CEO until July 12, 1991, when Custom terminated him. Relying on paragraph six of the agreement addressing "Cessation of employment," Custom did not award Schwartz any stock on or before August 1, 1991, as that year's bonus.

Schwartz filed his original petition against Custom on August 12, 1991, followed by his First Amended Petition on November 18 of the same year. The amended petition pled four counts: Count I sought specific performance of the Common Stock Agreement requiring Custom to award Schwartz additional shares of stock to which he claimed he was entitled on August 1, 1991; Count II sought a declaratory judgment ordering Custom to make and to continue making the stock awards for each year remaining under the five-year term as contemplated by the agreement; Count III sought a mandatory injunction requiring Custom to honor Schwartz's preemptive rights in order to maintain his one percent ownership of the company; and Count IV sought damages for Custom's breach of Schwartz's employment contract. Custom filed an answer denying Schwartz's allegations and a counterclaim in two counts. Custom sought a declaratory judgment and specific performance, asking the court to order Schwartz's shares awarded on August 1, 1990, be sold back to Custom pursuant to

paragraph ten of the stock agreement and to declare Schwartz not entitled to any further stock awards.

Custom then filed motions for summary judgment with respect to the first three counts of Schwartz's petition and its counterclaim. The motions were argued on May 5, 1993, at which time Schwartz filed his responses. The court granted both of Custom's motions. On May 20, Schwartz filed a motion to reconsider the order granting summary judgment, along with supporting exhibits and his own affidavit attesting to various facts not previously presented to the court. Custom filed a motion to strike the affidavit and exhibits as violative of Rule 74.04(c), which the trial court sustained. The court then denied Schwartz's motion.

Schwartz obtained leave to file a Second Amended Petition, which he filed on July 1, 1993. The petition realleged the first three counts of his previous petition[2] and the fourth count for breach of his employment contract. In addition, the petition asserted causes of action for failure to provide a service letter (Count V), for fraud with respect to the stock awards (Count VI), for breach of fiduciary duty by Lenauer and Clark brought in Schwartz's individual capacity (Count VII), and for breach of fiduciary duty by Lenauer and Clark brought as a shareholder's derivative action (Count VIII). The court dismissed Count VII on Custom's motion. The court granted Custom's motion for summary judgment with respect to Count VIII on May 24, 1994, after the parties filed their motions and responses and presented oral argument. Schwartz voluntarily dismissed Counts IV, V, and VI before trial. Schwartz then filed another motion to reconsider the court's order of May 5, 1993, which was denied. He now appeals the trial court's rulings with respect to Counts I, II, III, and VIII of his second amended petition and the denial of his motion to reconsider, as well as the court's ruling with respect to Custom's counterclaim.

■■■ In reviewing an appeal from summary judgment, "[o]ur review is essentially *de novo.*" *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.banc

---

2. Schwartz refiled these counts in order to pre- serve them for appellate review.

1993). We examine whether the moving party was entitled to judgment as a matter of law. *See id.* at 380. Summary judgment is not proper where a genuine issue of material fact exists. *Id.* at 382.

 Schwartz's first point on appeal encompasses several different issues and arguments; we address each in turn. First, Schwartz contends the trial court erred in granting Custom's motion for summary judgment as to Counts I and II of his petition because (1) the plain language of paragraph six of the stock agreement only releases Custom from its obligation to make the yearly stock awards when Schwartz, of his own volition, ceases his employment with the company, or (2) the provision is ambiguous and must be construed, creating a question of fact for trial.[3]

 "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896, 901 (Mo.banc 1990) (citation omitted). This intent is to be gathered from the contract itself where the contract is unambiguous. *Id.* The fact the parties do not agree on the proper interpretation of the contract does not render it ambiguous. *Id.* Here, the plain language of provision six is clear: no payment of stock is to be made after Schwartz's employment ceases, whatever the reason for the cessation, whether it be caused by Schwartz or Custom. A comprehensive reading of the stock agreement confirms this. Schwartz's shares were nontransferable and were subject to a voting proxy in favor of Lenauer and Clark, and most importantly, Schwartz was obligated to sell whatever stock he held back to Custom "[w]henever Schwartz's employment by Custom ceases, . . . ." The contract was clearly geared to protect the business, a closely held

corporation, from any outside influence by keeping all stock within the ownership and control of the principal owners. Schwartz's reading of the provision is inconsistent with the overall aim of the agreement, and would render the contract absurd, especially in light of the buy-sell provision of paragraph ten.

 Schwartz next contends Custom cannot rely on its own wrongful conduct in terminating him to avoid making the stock awards. The Common Stock Agreement provides, "Schwartz's right, if any, to continue to serve Custom as an officer, employee or in any other capacity is the subject of a separate and distinct agreement between the parties and shall not be enlarged or otherwise affected by this Agreement." The stock agreement explicitly stated no award would be made after Schwartz ceased working for Custom, without reference to whether such termination was voluntary, wrongful, or otherwise. Further, we have found no evidence this argument was raised below. Any facts alleging such wrongful conduct and its effects on the stock agreement were not contained in Schwartz's petition with respect to the first three counts—and the only counts—before the court on the motion for summary judgment.[4] Nor were any facts of wrongful or justified termination raised in the parties' filings on the motion. A party cannot raise an argument against a grant of summary judgment for the first time on appeal. *D.E. Properties v. Food For Less,* 859 S.W.2d 197, 201 (Mo.App. E.D.1993). Thus, the judgment of the trial court with respect to Counts I and II of Schwartz's petition must be affirmed.

 The last issue contained in Point I of Schwartz's appeal asserts the trial court erred in granting Custom's motion for summary judgment with respect to Count III of

---

3. Schwartz relies in large part upon a prior draft of the Common Stock Agreement to show an ambiguity existed. The parol evidence rule bars review of that document to create an ambiguity where none exists in the parties' final integrated agreement. *See Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 812 (Mo.App. E.D. 1992). The cases cited by Schwartz in an attempt to evade the parol evidence rule are inapposite.

4. Contrary to appellant's counsel's assertions at oral argument, none of the first three counts of Schwartz's petition incorporated any facts concerning wrongful termination, and only Counts II and III incorporated paragraph nine's bare allegation that ". . . Defendant breached the Employment Agreement by terminating Plaintiff's employment . . ."; nor did Custom's motion for summary judgment include Count IV.

Schwartz's petition. In Count III, Schwartz sought a mandatory injunction requiring Custom to allow Schwartz to exercise his preemptive rights attached to the first award of stock he had received. However, Schwartz failed to allege, either in his petition or his response to the motion for summary judgment, any facts showing the stock he held had preemptive rights attached, or showing Custom's Board of Directors could not issue stock bonuses to employees without first honoring any such preemptive rights.[5] The record does not contain any reference to what rights or limits existed as to the shares of stock owned by Schwartz under Custom's articles, nor were the articles themselves included. Furthermore, Schwartz never attempted to exert any preemptive rights when the alleged stock bonuses were made, and any claim Schwartz could have made was extinguished under the provisions of the Common Stock Agreement upon his termination.[6] Based on the record before us, we cannot say the trial court erred in granting Custom's motion for summary judgment with respect to this count.

■ Schwartz's second point on appeal finds error with the trial court's granting Custom's motion for summary judgment with respect to Counts I and II of its counterclaim. Custom sought to enforce the buy-sell provision of the stock agreement against Schwartz and requested a declaratory judgment that no further awards were due. Schwartz contends Custom cannot enforce the buy-sell provision in the manner chosen because that option only applied if Schwartz voluntarily left his employment with Custom. As previously set forth in our discussion of paragraph six of the stock agreement, we find no merit in this argument: Provision ten unambiguously states Schwartz must sell back his shares once his employment ceases. The option chosen by Custom was the only method of payment expressly provided. Alternatively, Schwartz argues Custom cannot profit from its wrongful conduct. Again, we

find the argument without merit for the reasons discussed in Point I.

■ For his third point on appeal, Schwartz claims the trial court erred in granting summary judgment in Custom's favor on Count VIII, his shareholder's derivative action. We find Schwartz had no standing to file such action. Schwartz was ordered to sell back his shares of stock on May 5, 1993. Under the Common Stock Agreement, he lost his right to hold these shares when his employment ended. Thus, his standing as a shareholder—and the concomitant right to bring a shareholder derivative action—was abolished on July 12, 1991. *See Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 609 (Mo.App. W.D.1983) (corporation entitled to enforce buy-back option in shareholders agreement as of date shareholder no longer active in business and demand was made).

Additionally, a shareholder's derivative action "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 52.09. Custom filed affidavits of all the other shareholders stating they do not agree with Schwartz's action and he does not represent their interests to demonstrate his lack of standing. *See Dawson v. Dawson*, 645 S.W.2d 120, 129 (Mo.App. W.D.1982). Schwartz responds the other shareholders were not similarly situated to him as their stock was held subject to a voting trust, while he held his with voting rights. Therefore, he maintains, he was excused from the "fairly and adequately represents" requirement of Rule 52.09. The evidence shows, however, Schwartz was awarded his stock subject to the execution a similar voting trust in favor of Clark and Lenauer. Thus, Schwartz failed to meet the necessary requirements for maintaining a shareholder derivative action set forth in Rule 52.09. Based on the above analysis,

---

**5.** · Schwartz's employment contract acknowledges his participation in the stock bonus plan was subject to the direction of the Board of Directors.

**6.** We further note preemptive rights are not limitless. Some authorities have stated preemptive rights do not apply where the new stock is offered in exchange for property or services. *See* 18A Am.Jur.2d § 533 (1985).

we find Schwartz lacked standing to bring this action.

 For his last point on appeal, Schwartz contends the trial court erred in denying his motion to reconsider the court's order of May 5, 1993, and in granting Custom's motion to strike the attachments thereto, which included Schwartz's own affidavit and his notes regarding the Common Stock Agreement. Schwartz argues these documents created genuine issues of material fact thereby rendering the trial court's order improper.[7] Under Rule 74.04(c) as it then existed, an "adverse party *prior to the day of hearing* may serve opposing affidavits" to controvert a motion for summary judgment. (Emphasis ours.) Therefore, as the attachments were filed after the day of the hearing and after the trial court ruled on the motion, the documents were not timely filed, and the court properly granted Custom's motion to strike them. Because the documents were not considered by the trial court and were not made part of the record, they likewise cannot be introduced into the record on appeal.[8] *Marc's Restaurant, Inc. v. CBS, Inc.,* 730 S.W.2d 582, 584 (Mo.App. E.D.1987). Thus, we conclude the trial court did not abuse its discretion in denying Schwartz's motion to reconsider its order of May 5, 1993.

Based on the foregoing, the judgment of the trial court is affirmed.

GERALD M. SMITH, P.J., and RHODES RUSSELL, J., concur.

---

7. In his brief and during his oral argument, counsel for Schwartz made reference to alleged facts concerning vacation and sick leave which had accrued to Schwartz and would have extended his employment past the August 1, 1991, stock award deadline. These references were to statements contained in Schwartz's affidavit which had been stricken from the record and alleged in Count IV (breach of the employment contract) of Schwartz's second amended petition which was filed after the court granted Custom's summary judgment motion. Therefore, the alleged facts were never properly before the trial court in ruling on Counts I, II, and III of the first amended petition.

8. We hereby grant Custom's motion to strike the documents from the legal file.